IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VICTOR NUNEZ, #K72060, | ) |
| | ) |
|                 **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. 3:15-cv-00514-SMY |
| | ) |
| THOMAS SPILLER, | ) |
| WEXFORD HEALTH SOURCES,[1] | ) |
| DR. VIPIN SHAH, | ) |
| CHRISTINE BROWN, | ) |
| DENNIS ELS,[2] | ) |
| K. MELVIN, and | ) |
| MAJOR MALCOM, | ) |
| | ) |
|                 **Defendants.** | ) |

**MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

    Plaintiff Victor Nunez is currently incarcerated at the Pinckneyville Correctional Center in Pinckneyville, Illinois. (Doc. 1 at 1.) Proceeding *pro se*, Nunez has filed a civil action pursuant to 42 U.S.C. § 1983, alleging that various prison staff and the entity contracted to provide medical care to prisoners in Illinois have been deliberately indifferent to his chronic eye condition since February 2014. (*Id.* at 1 & 6.) Nunez seeks nominal damages, money damages, and injunctive relief in the form of treatment for his medical problem. (*Id.* at 10.)

    This matter is now before the Court for a preliminary review of Nunez's complaint pursuant to 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915A, the Court shall review a "complaint

---

[1] Nunez named "Wexford Health Source" as a defendant, but the proper name for the entity is Wexford Health Sources. The **CLERK** is **DIRECTED** to correct the caption accordingly.

[2] Nunez's caption looks as if it spells Els' name as Elsad, but the remainder of his complaint – along with the exhibits attached thereto – indicate the correct spelling is Els. The **CLERK** is hereby **DIRECTED** to correct the caption to reflect the correct spelling of Els' name.

in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Background

This case concerns Nunez's eye care – or the alleged lack thereof – at Pinckneyville Correctional Center. Nunez first saw Dr. Els, an eye doctor at Pinckneyville, on February 26, 2014. (*Id.* at 6.) During that visit, Nunez told Els that he suffered from a condition called keratoconus, a disorder that occurs when the normally round cornea (the front part of the eye) becomes thin and cone shaped. (*See id.*) Nunez informed Els that physicians at other prisons treated his condition with hard contacts, soft contacts, three solutions to clean his contacts, and a biennial referral to a specialist to avoid complications. (*Id.*) Els purportedly told Nunez that he "wasn't gonna get any of [that] treatment in [Pinckneyville]" and sent Nunez on his way. (*Id.*)

From February 2014 to May 2015, Nunez's eye condition allegedly worsened: he suffered "extra irritation and infections in [his] corneas" and developed "scar tissue" in his eyes due to "being forced to wear the hard contacts without protection from the soft contact lenses." (*Id.* at 7.) As his condition worsened, Nunez "beg[ged]" Els and Brown, the health care unit administrator, for his "soft contact lenses," but was told by Els to "deal with it." (*Id.*) Els also told Nunez that he would have to "wear the hard contacts alone," and that he would not "renew any of [the] treatment" employed by physicians at other institutions. (*Id.*) As a result, Nunez says he has suffered increased pain and other problems with his eyes. (*Id.* at 8.)

Nunez claims he filed a grievance with officials at the prison, but was denied.  (*Id.* at 5.) Unsatisfied with the prison's response, Nunez filed a § 1983 suit in this Court on May 6, 2015.

### Discussion

Nunez's complaint focuses on individual capacity claims against Els, Brown, Shah, and other non-medical officials for failure to treat his eye condition, so the Court will start with those claims (**Count 1**).  To put forth a viable individual capacity claim under the Eighth Amendment for improper medical care, Nunez must first show that that he suffered from an "objectively serious" condition, and must then allege that each of the named defendants "acted with deliberate indifference" to that condition.  *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000).

For screening purposes, Nunez has cleared the first hurdle – he has alleged the existence of an objectively serious medical condition.  An objectively serious condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001).  Factors that indicate a serious condition include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  Here, Nunez says he has been suffering from keratoconus since 2008 and that it has deteriorated since his arrival at Pinckneyville, causing him visual problems, pain, and infections.  That is enough to plead a serious condition for purposes of preliminary review.

While it is a closer question, Nunez's complaint also alleges deliberate indifference by Els related to his eye condition.  To be sure, deliberate indifference is a robust state of mind requirement: a prisoner must allege that an official acted intentionally or in a criminally reckless

manner to state a claim – "medical malpractice, negligence, or even gross negligence" will not do. *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006). Because medical malpractice does not equate to a constitutional violation, allegations from a prisoner claiming that he is generally dissatisfied with his treatment or that he disagrees with the physician concerning proper treatment do not state a claim. *Snipes v. DeTella*, 95 F.3d 586, 591-92 (7th Cir. 1996). That said, deliberate indifference might exist if a medical provider refuses "to provide an inmate with prescribed medication," refuses to "follow the advice of a specialist," or persists with "a course of treatment that [the medical provider] knows is ineffective." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). Here, Nunez alleges that Els deprived him of treatment prescribed by other physicians and that he was denied corrective treatment when his condition worsened. This is sufficient to allege deliberate indifference as to Els, so **Count 1** may proceed against him.

Nunez has also named Brown, the health care administrator at the prison, and Shah, the medical director, in his deliberate indifference claim. His allegations against these two are thin, but his claim can proceed if he pleads personal involvement by both in his treatment. *Munson v. Gaetz*, 673 F.3d 630, 637 (7th Cir. 2012). For Brown, Nunez claims he "beg[ged]" her for help, but was ignored. (Doc. 1 at 7.) Especially in light of her role as administrator, this is sufficient to allege Brown's personal involvement at the pleading stage. *See Myrick v. Anglin*, 496 F. App'x 670, 675 (7th Cir. 2012) (holding that it was improper to dismiss healthcare administrator from case, as prisoner "complained to her directly about the medical staff's" failure to treat and her "position justifie[d] the inference that she bore some responsibility"). For Shah, Nunez says next to nothing, only claiming in the grievance section of his complaint that the director denied him treatment. (Doc. 1 at 5.) However, given Shah's position as director, this is just enough to state a claim against him for threshold review purposes. *See Williams v. Faulkner*, 837 F.2d 304,

308 (7th Cir. 1988) (personal involvement of administrator could be inferred in case alleging failure to provide treatment by another doctor, as administrator had a responsibility to ensure that prisoners receive "adequate medical care"). So **Count 1** may proceed against Brown and Shah.

Leaving no stone unturned, Nunez has also named three non-medical officials in his deliberate indifference claim, specifically Warden Spiller, Grievance Officer Melvin, and Major Malcom. As was the case with Shah, Nunez says nothing about these defendants in the narrative of his complaint, only mentioning them briefly in the section on the prison's grievance procedure. (Doc. 1 at 5.) Nunez might be alleging that these officials were indifferent because they denied his grievance, but the mere denial of a grievance, on its own, is not a constitutional violation. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to a [constitutional] violation.").

To be sure, non-medical officials "cannot simply ignore an inmate's plight." *Arnett*, 658 F.3d at 755. If they fail to refer a prisoner for treatment after receiving a grievance, or once referred "condone[] or approve[]" prison medical staff's "refusal to provide" treatment, then they might be liable, depending on the severity of the prisoner's condition. *Id.* at 755-56; *see also Hayes v. Snyder*, 546 F.3d 516, 525 (7th Cir. 2008) (non-medical officers can be "chargeable" with "deliberate indifference" where they "have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner"). But Nunez does not allege anything like that in his complaint here – he does not say much of anything as to these specific defendants at all – so **Count 1** must be dismissed as to Spiller, Melvin, and Malcom without prejudice. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (affirming dismissal of grievance-related official because prisoner did not "allege any specific involvement" by that party in his treatment). Nunez is free to file an amended complaint to explain how these

individuals' were involved in the denial of care if he wishes. Any amended complaint must stand on its own, and must also abide by Federal Rule of Civil Procedure 15.[3]

Reading Nunez's complaint liberally, he also brings a § 1983 claim against Wexford Health Sources (**Count 2**). For purposes of § 1983, the courts treat "a private corporation acting under color of state law as though it were a municipal entity," *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2004), so Wexford will be treated as a municipal entity for this suit. "[T]o maintain a § 1983 claim against a municipality, [a plaintiff] must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (*quoting Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). Here, Nunez has not alleged any policy or custom attributable to Wexford. He only claims that his pain was inflicted "at the hands" of Wexford, but that is not enough to state a claim. *See Olive v. Wexford Corp.*, 494 F. App'x 671, 673 (7th Cir. 2012) (allegation that Wexford had a policy of "denying prison inmates adequate medical care" insufficient, as it did not "identify any concrete policy, let alone an unconstitutional one"). Accordingly, **Count 2** against Wexford must be dismissed without prejudice.

One final note concerning the relief sought by Nunez. Nunez seeks injunctive relief in the form of treatment for his condition, so the warden of Pinckneyville is a proper defendant, as he "would be responsible for ensuring that any injunctive relief is carried out." *Gonzalez*, 663 F.3d at 315. Accordingly, Warden Spiller will remain in this suit in his official capacity only.

---

[3] Rule 15 permits a party to file an amended complaint "once as a matter of course" within 21 days of service or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsible pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). All other amendments must be with the opposing party's consent or with leave of court. FED. R. CIV. P. 15(a)(2).

**Disposition**

IT IS HEREBY ORDERED that, for the reasons stated, **COUNT 1** shall **PROCEED** against **ELS**, **BROWN**, and **SHAH** in their individual capacities.  **COUNT 1** is **DISMISSED** without prejudice as to **SPILLER**, **MELVIN**, and **MALCOM** in their individual capacities. **COUNT 1** shall proceed against **SPILLER** in his official capacity only, for the limited purpose of ensuring that possible injunctive relief is carried out.  Because there are no further claims against them, **MELVIN** and **MALCOLM** are dismissed from this suit without prejudice.

IT IS FURTHER ORDERED that **COUNT 2** is **DISMISSED** without prejudice. Because there are no further claims against it, **WEXFORD HEALTH SOURCES** is **DISMISSED** from this suit without prejudice.

IT IS FURTHER ORDERED that Plaintiff's Motion for Service of Process at Government Expense (Doc. 4) is **GRANTED**.  Service shall be ordered as indicated below.

IT IS FURTHER ORDERED that the Clerk of Court shall prepare for Defendants **ELS**, **BROWN**, **SHAH**, and **SPILLER** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the

Defendant's current work address or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded.

Defendants are **ORDERED** to timely file appropriate responsive pleadings to the complaint and shall not waive filing replies pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Philip M. Frazier for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **REFERRED** to United States Magistrate Judge Philip M. Frazier for consideration.

Further, this entire matter is hereby **REFERRED** to United States Magistrate Judge Philip M. Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for

leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 28, 2015**

                                        **s/ STACI M. YANDLE**
                                        **Judge Staci M. Yandle**
                                        **United States District Judge**