# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VICTOR NUNEZ, K72060, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 15-CV-514-SMY-RJD |
| JACQUELINE LASHBROOK, CHRISTINE BROWN and DR. DENNIS ELS | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Victor Nunez, an inmate with the Illinois Department of Corrections ("IDOC"), suffers from an eye condition known as keratoconus. Keratoconus is a genetic disorder characterized by an irregularly shaped cornea. Nunez asserts in this lawsuit that the Defendants provided him inadequate medical treatment for the condition while at Pinckneyville Correctional Center ("Pinckneyville"). The named defendants are Dr. Dennis Els (prison contract optometrist), Christine Brown (Pinckneyville Health Care Unit Administrator) and Jacqueline Lashbrook, in her official capacity as the Pinckneyville Warden.

Nunez filed suit on May 6, 2015 (Doc. 1), and the Complaint was screened pursuant to 28 U.S.C. § 1915A on May 28, 2015. In the Screening Order, Nunez was found to have articulated a colorable Eighth Amendment deliberate indifference to serious medical needs claim against Brown, Dr. Els and Dr. Shah, a prison physician. Because Nunez also seeks prospective injunctive relief, Warden Thomas Spiller was added as a defendant in his official capacity. The

current Warden at Pinckneyville, Jacqueline Lashbrook, was later substituted for Defendant Spiller.

Nunez later filed an Amended Complaint (Doc. 22) dismissing Dr. Shah, but proceeding against the above-mentioned defendants. Defendants now seek summary judgment. For the following reasons, Dr. Els' motion for summary judgment (Doc. 50) is **DENIED**. The motion for summary judgment filed by Defendants Christine Brown and Warden Lashbrook (Doc. 56) is **GRANTED** as to Warden Lashbrook and **DENIED** as to Christine Brown.

## BACKGROUND

The following facts are drawn from Nunez's deposition unless otherwise noted. Nunez has been an inmate with IDOC since 2001. (Nunez Deposition, Doc. 58-6, p. 3). In 2008, he was diagnosed as having keratoconus by Dr. Carter at Hill Correctional Center ("Hill"). *Id*. Dr. Carter informed Nunez that keratoconus is a rare condition in which a person's corneas are unusually thin and susceptible to deformation. *Id*. For treatment, Dr. Carter initially prescribed Nunez hard contact lenses. *Id*. at p. 4. After Nunez experienced pain and discomfort with the hard contact lens, Dr. Carter decided to try the "piggy-back" method. *Id*. at p. 4. The piggy-back method consists of wearing both hard contact lenses and soft contact lenses at the same time. *Id*. at p. 4. The soft contact lenses are placed directly on the eye to protect the cornea and do not have a refractive index (i.e., do not have a prescription strength). *Id*. at p. 4. The hard contact lenses are then placed on top of the soft contacts. *Id*. at p. 4. The hard and soft contact lenses require different cleaning solutions and are kept in separate cases. *Id*. at p. 4. Dr. Carter told Nunez that a pair of the soft contact lenses would last approximately 30 days, but the hard contact lenses are good for up to five years. *Id.* at p. 5. According to Nunez, he has experienced

keratoconus related blurry vision since his late teenage years – his vision significantly improved after using the two sets of contact lenses. *Id*. at p. 4.

In early 2012, IDOC officials transferred Nunez from Hill to Pontiac Correctional Center ("Pontiac"). On March 7, 2012, optometrist Dr. Montwill examined Nunez at Pontiac. (Nunez medical chart, Doc. 58-5, p. 23). Dr. Montwill continued Nunez on the piggy-back contact treatment plan. (Doc. 58-6, p. 6).

In late 2012, IDOC officials transferred Nunez from Pontiac to Stateville Correctional Center ("Stateville"). *Id*. at pp. 6-7. On December 13, 2012, Nunez was examined by optometrist Dr. Dunn at Stateville. *Id*. at p. 7. Dr. Dunn also continued the piggy-back treatment plan. *Id*. at p. 7. Nunez's last optometry examination at Stateville occurred on December 16, 2013 with Dr. Dunn. (Nunez medical chart, Doc. 58-5, p. 24). Dr. Dunn noted that Nunez was out of the soft contact lenses and that he was having problems with his hard contact lenses. *Id*. Dr. Dunn also wrote that new contacts would need to be ordered after the current treatment plan is approved. *Id*.

In February, 2014, IDOC officials transferred Nunez from Stateville to Pinckneyville. (Doc. 58-6, p. 8). Some of Nunez's contact lens supplies were lost in transit, and when he arrived at Pinckneyville, he only had a single pair of both hard and soft contact lenses. *Id*.

On February 26, 2014, optometrist Dr. Els examined Nunez at Pinckneyville. *Id.* During the examination, Nunez told Dr. Els that he needed new hard and soft contact lenses. *Id*. at p. 9. Nunez also mentioned to Dr. Els that he would like to go to an outside clinic for an examination. *Id*. at p. 9.[1] Dr. Els told Nunez that he was going to have to "deal with it" and that he would not be receiving any new contact lenses or going to an outside clinic for treatment. *Id*. at p. 9. Dr.

---

[1] While at Hill Correctional Center, Dr. Carter had sent Nunez to an outside clinic "on a couple of occasions." *Id*. at p. 9.

Els then ended the examination. *Id*. at p. 9. Dr. Els charted that Nunez shall continue to use the current contact lens combination and prescription. (Doc. 58-5, p. 29). He also ordered a new contact lens case and solution. *Id*.[2]

On April 16, 2014, Nunez submitted a lengthy prison grievance complaining about the lack of treatment for his eye condition. (IDOC grievance form, Doc. 58-2, pp. 1-2). Nunez wrote in the grievance that Dr. Els did not provide proper treatment at the February, 2014 examination. *Id*. He requested contact lens solution, a referral to an outside clinic, and new hard and soft contact lenses. *Id*. at p. 2. The grievance was then forwarded to Health Care Unit Administrator Christine Brown. *Id.* at p. 1. Nunez's counselor, "T. Krisro" responded to the grievance, stating:

> Per C Brown HCUA, you were approved for hard contacts in 2012. Contacts were issued to you. They're good for 5 years therefore in 2017 you may be issued another pair. Ms. Brown stated you need soft contacts once per year. You will be scheduled to see the eye Dr. for another evaluation to ensure you receive what is medically indicated.

(Doc. 58-2, p. 1). Nunez's counselor then signed and dated the grievance May 14, 2014. *Id*.

Nunez saw Dr. Els for a follow up examination on May 14, 2014. (Doc. 58-6, p. 10).[3] At the examination, Nunez requested new soft contact lenses. *Id*. Dr. Els responded that Nunez would not be receiving new soft contact lenses and that he would have to wear the hard contact lenses directly on his eye. *Id*.

At that time, Nunez had stopped wearing his soft contact lenses because they were completely worn out. *Id*. He only wore his hard contact lenses for important occasions, such as

---

[2] Dr. Els testified at his deposition that he also ordered Nunez new soft contact lenses at the February 26, 2014 examination. (Dr. Els deposition, Doc. 50-3, p. 3).
[3] Dr. Els testified at his deposition that he did not recall the May 14, 2014 examination. (Doc. 58-12, p. 4). Moreover, there does not appear to be any record of the examination in Nunez's medical charts. However, in Brown's motion for summary judgment, she mentions in a declaration that around this time period, she "placed Mr. Nunez on eye doctor call line for another evaluation[.]" (Doc. 57-1, p. 2, ¶ 8).

when writing letters to family. *Id*. When Nunez did wear the hard contact lenses by themselves, he experienced irritation and "a lot of pain[.]" *Id*. If he wore no contacts at all, he was essentially blind. *Id*. Nunez eventually did receive periodic refills of contact lens solution. *Id* at p. 11. However, prison officials provided the wrong kind of contact lens solution – Nunez was provided solution for soft contact lenses, but at that point in time he only possessed his hard contact lenses. *Id*. at p. 11.

Following the May 14, 2014 examination, Nunez submitted three "Offender Request" forms asking Defendant Brown if she could provide him with soft contact lenses and contact lens solution. (Doc. 58-7, Doc. 58-8, Doc. 58-9). Nunez submitted the forms in May and June of that year. *Id*. He did not receive a response to the three request forms. Nunez did, however, appeal his April 16, 2014 grievance to the prison grievance office. (Doc. 1-1, p. 6). The prison grievance office recommended that the grievance be denied, noting that "[i]t appears that [Nunez's] medical concerns have been addressed by health care staff. Offender should follow proper protocol to be seen for any further issues." *Id*. Warden Spiller concurred with the recommendation and denied the grievance on July 22, 2014. *Id*.

On August 30, 2014, Nunez submitted a prison grievance marked "emergency," requesting treatment for his eye condition. (Doc. 58-4). The grievance explains his eye condition, that he needs to wear two types of contacts and that he is not receiving proper treatment. *Id*. On September 22, 2014, Warden Spiller denied the grievance as an emergency and directed Nunez to submit it through the normal channels. *Id*. Nunez then submitted two additional Offender Request forms to Brown in September and November of 2014, but he did not receive a response to either one. (Doc. 58-10, Doc. 58-11).

Nunez's third and final appointment with Dr. Els occurred on February 18, 2015. (Medical Chart at Doc. 58-5, p. 30). During this examination, Dr. Els told Nunez that he ordered him a pair glasses. (Doc. 58-6, p. 11). Nunez did not think that Dr. Els would change his mind in regards to ordering him new contact lenses, so he did not raise the issue with him at the appointment. *Id*.

On April 8, 2015, Nunez underwent an eye examination at Pinckneyville with a new optometrist, Dr. Brummel. (Doc. 58-5, p. 31). Dr. Brummel recommended that Nunez go back to the piggy-back method and ordered Nunez more soft contact lenses. *Id*. Nunez received the soft contact lenses a few weeks later and the pain and discomfort went away. (Doc. 58-6, p. 11).

On June 17, 2015, Dr. Brummel noted in Nunez's medical records that his hard contact lenses were "severely scratched" and that he would be ordered a new pair. (Doc. 58-5, p. 32). Medical records indicate that Nunez was issued a new pair of hard contact lenses in July, 2015, but there was an error in the contact lens prescription. *Id*. at pp. 33-34.

Prison officials then sent Nunez to an outside optometrist for an examination on February 15, 2016. According to the medical records, Nunez received a new set of hard contact lenses not long after. *Id*. at p. 41. During his deposition on September 13, 2016, Nunez testified that he has been provided adequate contact lens solution along with proper hard and soft contact lenses. (Doc. 58-6, p. 19). Dr. Brummel also informed Nunez that he will be seen by an optometrist "every six months or so." *Id*.

Attached to the Defendants' motion for summary judgment is a Declaration signed by Defendant Brown. (Doc. 57-1). Brown states in her Declaration that she is the current Healthcare Unit Administrator ("HCUA") at Pinckneyville. *Id*. at p. 1. As the HCUA, her duties include monitoring the contract between IDOC and Wexford Health Sources, Inc. ("Wexford").

*Id*. at p. 1. As part of her duties, she ensures that inmates are "generally receiving medical care in accordance with all administrative directives." *Id*. at p. 1. The HCUA does not provide treatment to inmates, prescribe medication, or distribute medication (or contact lenses). *Id*. The HCUA will sometimes review an inmate's medical file if the inmate complains that he is not being seen by medical staff. *Id*. In such situations the HCUA may contact nursing staff to ensure that the offender is being treated. *Id*. Brown also attests that she "do[es] not recall receiving offender request slips form [sic] Mr. Nunez dated June 2, 2014, June 11, 2014, September 15, 2014, or November 1, 2014." *Id*. at p. 2.

## DISCUSSION

Summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage of the litigation, the facts and all reasonable inferences are drawn in favor of the nonmoving party. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012). When faced with a motion for summary judgment, the court shall not "weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

A motion for summary judgment is not a "vehicle for resolving factual disputes" nor is it a "paper trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). However, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" to survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).

Nunez brings this action pursuant to 42 U.S.C. § 1983, asserting that the defendants violated his Eighth Amendment rights by failing to provide adequate medical care. Under 42 U.S.C. § 1983, "government officials, while acting under the color of state law, who deprive individuals of their constitutionally protected rights, are personally liable for damages." *Stagman v. Ryan*, 176 F.3d 986, 998–99 (7th Cir. 1999). Inmates have an Eighth Amendment right to adequate food, clothing, sanitation and medical treatment. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994). Stated another way, inmates are entitled to the "minimal civilized measure of life's necessities." *Id*. at 834, 114 S. Ct. at 1977.

Not all untreated medical conditions will give rise to an Eighth Amendment claim. To establish an Eighth Amendment denial of medical treatment claim, the plaintiff must demonstrate [1] that he suffered from an "objectively serious medical condition" and [2] that the defendants were "deliberately indifferent" to the condition. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). An objectively serious medical condition "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Because the Defendants do not dispute that Nunez's eye condition is objectively serious, the issue is whether they were deliberately indifferent to it.

Deliberate indifference requires a "sufficiently culpable state of mind" from the defendant. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). It exists when a prison official knows of and disregards a "substantial risk of serious harm." *Petties,* 836 F.3d at 728. This is a

less demanding standard than purposeful, but it requires something more than ordinary negligence. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

It must also be noted that an inmate does not have to be completely ignored to have a valid Eighth Amendment claim. *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011). An inmate who receives some treatment can still establish deliberate indifference, so long as the treatment received is "blatantly inappropriate." *Id*. (*quoting Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir.2005)). "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

### *Dr. Els*

When the record is viewed in a light most favorable to Nunez, a reasonable jury could conclude that Dr. Els demonstrated deliberate indifference. According to Nunez, he lost his contact lens supplies during the transfer process to Pinckneyville in February, 2014. He was left with only a single pair of both hard contact lenses and soft contact lenses. The soft contact lenses quickly wore out and the hard contact lenses had become foggy due to wear.

When Dr. Els examined Nunez on February 26, 2014, he told Nunez that he would not be receiving any new contact lenses and that he would have to "deal with it." When Nunez returned for a second examination on May 14, 2014, Dr. Els told him that he would have to wear the hard contact lenses directly on his eye. At this point Nunez was left with two options; wear the painful hard contact lenses by themselves, or not wear any contact lenses at all and be essentially blind.

Although Dr. Els' conduct at the February, 2014 examination could arguably possibly be construed as an isolated instance of negligence, Nunez raised the issue Dr. Els on two occasions.

A jury could reasonably find that Dr. Els should have evaluated the situation and ensured that Nunez received an appropriate course of treatment at the May 2014 examination. It is also curious that no medical records appear to exist for the May, 2014 examination, despite the fact that Nunez states the appointment occurred and Brown asserts that she signed Nunez up for an examination around that date. For these reasons, Dr. Els' motion for summary judgment will be denied.

### *Christine Brown*

Summary judgment will also be denied as to Defendant Christine Brown. Although Brown does not have the authority to mandate that an inmate will receive a specific course of treatment, she admits in her Declaration that she may resolve the situation where an inmate complains they are not receiving any treatment. The record in this case shows that Brown acted reasonably when she assisted in providing a response to Nunez's April 16, 2014 grievance and scheduled Nunez for a follow up appointment with Dr. Els. The record is less clear regarding Brown's conduct after Nunez's May 14, 2014 examination.

Nunez claims that he submitted multiple Offender Request forms to the Health Care Unit and Brown requesting eye treatment. These included a form sent to Dr. Els on May 24, 2014 (Doc. 58-7), a form sent to Brown on June 2, 2014 (Doc. 58-8), a form sent to Brown on June 11, 2014 (Doc. 58-9), a form sent to Brown on September 15, 2014 (Doc. 58-10) and a form sent to Brown on November 1, 2014 (Doc. 58-11). Nunez did not receive a response to any of these Offender Request forms and Brown states in her Declaration that she does not recall receiving the last four forms.

Additionally, Brown correctly notes in her motion for summary judgment that *respondeat superior* is not a source of liability in § 1983 actions, *see, e.g., Ashcroft v. Iqbal*, 556 U.S. 662,

676, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009), and that merely issuing a ruling on a prison grievance does not subject a prison official to constitutional tort liability. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). However, Brown admits that as the HCUA, she addresses prisoner complaints in which the prisoner asserts he is not receiving medical treatment. Further, Nunez testified that he sent Brown *four* Offender Request forms stating that he was not receiving adequate eye treatment. Although Brown attests that she does not recall ever receiving the four request forms, Nunez has presented sufficient evidence to create a genuine issue of material fact as to whether Brown was aware that he was not receiving adequate treatment. Whether she did in fact receive the request forms, and chose to ignore them, is a determination that must be made by a jury.

Brown also argues that she is entitled to dismissal on the basis of qualified immunity. "Public officials performing discretionary functions are entitled to qualified immunity from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Thomas v. Ramos*, 130 F.3d 754, 763 (7th Cir. 1997) (cite and quote omitted). When addressing a qualified immunity issue, the Court conducts the following two pronged analysis, considering "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether the constitutional right was clearly established at [that] time." *Estate of Clark v. Walker*, 865 F.3d 544, 550 (7th Cir. 2017) (*quoting Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009)). "The crux of the qualified immunity test is whether officers have fair notice that they are acting unconstitutionally." *Mullenix v. Luna*, 136 S. Ct. 305, 14, 193 L. Ed. 2d 255 (2015). The two prongs of the qualified immunity analysis may be addressed in either order. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

It has been clearly established for several decades that the "deliberate indifference to serious medical needs of prisoners" is unlawful under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). Brown does not dispute that Nunez suffers from a serious medical need. Liability therefore hinges on the factual dispute as to whether her actions constituted deliberate indifference.

Although nonmedical prison administrators may generally defer to the decisions of medical professionals, *see, e.g., Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010), Nunez asserts that he was not being provided the proper contact lenses or the proper supplies and that he contacted Brown in an attempt to resolve the issue. This is less a question of medical judgment and more an issue as to whether Nunez was receiving adequate treatment at all. Nunez contends that Brown was aware that he was not receiving proper treatment and Brown contends that she never received notice of his issues after the May 14, 2014 examination. Again, this is a factual dispute to be resolved by the jury. Thus, Brown is not entitled to qualified immunity.

### *Warden Lashbrook*

Summary judgment will, however, be granted to Warden Lashbrook. The Constitution limits the jurisdiction of federal courts to "actual, ongoing cases or controversies" and a claim becomes moot when "there is no longer an injury that can be redressed by a favorable decision." *Ostby v. Manhattan School District No. 114*, 851 F.3d 677, 682 (7th Cir. 20017). Warden Lashbrook is a defendant in this matter in her official capacity solely for the purposes of ensuring that injunctive relief is carried out.[4]

---

[4] Defendant Lashbrook is the current Warden at Pinckneyville. When Nunez initiated this action, Thomas Spiller served in that role. Nunez asserts in his response to Lashbrook and Brown's motion for summary judgment that his amended complaint (Doc. 22) asserts claims against Spiller in his individual capacity. However, the Court did not permit Nunez to assert an individual capacity claim against Spiller because the allegations in the amended complaint did not allege personal involvement. (Doc. 21). As such, there are currently no claims against Spiller in his individual capacity and Warden Lashbrook is only a defendant in this matter in her official capacity.

After filing suit, Nunez received contact lens solution along with new hard and soft contact lenses. He was also sent to an outside optometrist for an examination. Based on these events that have occurred *after* Dr. Els' course of treatment, no reasonable factfinder could conclude that Nunez is suffering from an ongoing Eighth Amendment violation, and the claim for injunctive relief is now moot.

An exception to the mootness doctrine does exist where the alleged injury is "capable of repetition, yet evading review[.]" *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976, 195 L. Ed. 2d 334 (2016). Such an exception applies "only in exceptional situations, where (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Id*. (cite and quotes omitted).

Dr. Els' failure to provide the proper contact lenses or solution appears to be an isolated occurence in an overall course of treatment by prison healthcare providers. While the possibility exists that Nunez could be denied proper eye care in the future, Nunez has not shown that there is a "reasonable expectation" that this will occur. The "capable of repetition, yet evading review" exception to the mootness doctrine is therefore inapplicable.

## CONCLUSION

Dr. Els' motion for summary judgment is **DENIED**. The motion for summary judgment filed by Defendants Christine Brown and Warden Lashbrook is **GRANTED** as to the Warden Lashbrook and **DENIED** as to Christine Brown.

**IT IS SO ORDERED.**

**DATED: January 23, 2018**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**